UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GILFORD LOVELL,

                                              Plaintiff,

  v.                                                            No. 9:18-CV-0685
                                                                  (TJM/CFH)

SUPERINTENDENT MCAULIFFE; ACTING
CAPTAIN MCCABE; and SERGEANT FURNACE,

                                            Defendants.

---

**APPEARANCES:**                             **OF COUNSEL:**

Gilford Lovell
16-R-2708
Cape Vincent Correctional Facility
Rte. 12E
PO Box 739
Cape Vincent, New York 13618
Plaintiff pro se

Attorney General for the                 MICHAEL G. MCCARTIN, ESQ.
State of New York                          Assistant Attorney General
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Gilford Lovell ("Lovell"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Superintendent McAuliffe ("McAuliffe"), Acting Captain McCabe ("McCabe"), and Sergeant Furnace ("Furnace") for violations of his rights under the First Amendment. Dkt. No. 1 ("Compl."). Presently pending before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 14. Lovell opposed the motion.[2] Dkt. No. 19. For the following reasons, it is recommended that Defendants' Motion for Summary Judgment be denied.

## I. Background

### A. Facts[3]

---

[2] Defendants did not file a reply.

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

Defendants filed a Statement of Material Facts. Lovell responded and admits the facts contained in certain paragraphs of Defendants' Statement of Material Facts. Additionally, Lovell annexed exhibits to his Complaint (Dkt. No. 1 at 8-12) and to his response to the motion (Dkt. No. 19-1 at 5-15). Defendants do not object or challenge the authenticity of any documents. Therefore, to the extent that the "facts" asserted by the

At the time of the incidents described in the Complaint, Lovell was confined at Riverview Correctional Facility ("Riverview C.F."). See generally Compl. Lovell is a practicing Rastafarian. Dkt. No. 14-2 at 10.[4] One of the tenets of his religion is that no sharp object shall "touch you from your neck up." Id. at 11. As a result, Lovell cannot shave his beard. Id.

In November 2016, Lovell was approached by a corrections officer and told to remove the braid from his beard. Dkt. No. 14-2 at 12. Lovell told the officer that it was not a braid, rather, it was a dreadlock and "part of his religion." Id. Another officer approached and advised Lovell that he "need[ed] to get a permit for [his] braid." Id. Lovell wrote to Albany to obtain a permit. Id. at 13.

On January 12, 2017, at the direction of Defendant McCabe, Defendant Furnace ordered Lovell to "cut [his] beard or [he] was going to the SHU [Special Housing Unit]."[5] Dkt. No. 14-2 at 13, 15. Later the same day, Lovell explained to Defendant McAuliffe that he was attempting to resolve the issue "with Albany" and McAuliffe responded that, "whatever decisions his officers made, that's what the decision is." Id. at 14. On January

---

parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion. See U.S. v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)). In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-moving party's favor. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

[4] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[5] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

12, 2017, Lovell was forced to cut his dreadlock beard to avoid SHU confinement. Id. at 15, 18.

On February 8, 2017, Lovell filed a grievance (RV-11816-17) and claimed that he was forced to cut his beard in violation of his religious and cultural beliefs because defendants had threatened him with SHU confinement. Compl. at 10, 12; Dkt. No. 14-2 at 9; Dkt. No. 14-3 ¶ 2; Dkt. No. 14-4. On February 10, 2017, the Inmate Grievance Resolution Committee ("IGRC") referred the matter to Religious Services "to see exactly what is allowed for the grievant in terms of a beard[.]" Compl. at 11. On February 16, 2017, Lovell appealed the IGRC's decision to the Superintendent. Id.

On May 26, 2017, Defendant McAuliffe denied the grievance after an investigation revealed that, "[t]here is no evidence that the grievant was ordered to shave his beard. After being ordered to remove the braid, the grievant then decided to shave." Compl. at 8. On May 27, 2017, Lovell filed an administrative appeal of McAuliffe's decision to the Central Office Review Committee ("CORC"). Id.; Dkt. No. 14-3 ¶ 1. Lovell claimed that, "it is continuously being said that I had a braid in my beard. [T]hat is false. [I] had a dreadlock beard." Compl. at 1 at 8-9.

Because he failed to receive a response from CORC within thirty days, Lovell wrote to the grievance representatives at the facility. Dkt. No. 14-2 at 33. On August 10, 2017, Lovell forwarded a letter to K. Monnett ("Monnett"), the Inmate Grievance Program Supervisor ("IGPS") regarding the status of his appeal. Dkt. No. 19-1 at 6. Monnett responded, "[y]our appeal to CORC was received in [sic] June 13, 2017 and as of this date (8/10/17) is still pending." Id.

On November 21, 2017, Lovell forwarded a letter to the "Grievance Chairperson"

4

advising that he had not received any response to his appeal. Dkt. No. 19-1 at 8. Lovell received an unsigned response advising, "[i]t is still being reviewed. I have received no dispositions back as of today. As soon as I receive something I will forward it on to you. CORC is back-logged almost a year." Id.

Plaintiff commenced this action on June 13, 2018. See Compl. On January 9, 2019, CORC denied the appeal. Dkt. No. 14-4 ¶ 2, Dkt. No. 19-1 ¶ 5.

### B. Procedural History

On June 13, 2018, the Court received the Complaint in the within action. See Compl. Upon review of the Complaint, the Court directed Defendants to respond to the First Amendment claims. Dkt. No. 4. On October 10, 2018, Defendants filed an Answer to the Complaint. Dkt. No. 10. On November 2, 2018, Lovell appeared at a deposition. Dkt. No. 14-2. On January 14, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Lovell's First Amendment claims. Dkt. No. 14. Lovell opposed the motion. Dkt. No. 19.

### II. Discussion[6]

Lovell contends that Defendants forced him to shave his beard in violation of the First Amendment. See generally, Compl. Defendants move for summary judgment arguing that Lovell failed to exhaust his administrative remedies. See generally Dkt. No. 14.

---

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

## A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

Defendants contend that the motion for summary judgment must be granted because Lovell failed to exhaust his administrative remedies through available grievance procedures. Dkt. No. 14-7 at 3. In response, Lovell claims that administrative remedies were unavailable to him. Dkt. No. 19 at 3. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion requirement applies

7

even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[7]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling

---

[7] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

If it is found that the plaintiff has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice. See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec's. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted). Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

### 1. Did Plaintiff Exhaust his Administrative Remedies?[8]

Defendants do not dispute that Plaintiff filed a grievance pertaining to his claims in the

---

[8] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

9

underlying action.  However, Defendants argue that Plaintiff "admitted in his deposition that he filed this lawsuit in this district court prior to his grievance appeal being decided at the third stage of the DOCCS grievance process[.]"  Dkt. No. 14-7 at 3 (emphasis omitted).

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions."  Peoples v. Beldock, 212 F.Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

The record is clear that Plaintiff filed this action on June 13, 2018, and, at that time, CORC had yet to issue a decision on his grievance.  See Dkt. No. 1; Dkt. No. 14-3 at ¶ 2. DOCCS IGP Assistant Director Rachael Seguin declared that, based on her review of DOCCS' records, CORC decided the appeal on January 9, 2019 – five months after Plaintiff commenced this action.  See Dkt. No. 14-3 at ¶2.  The undersigned notes that the fact that Plaintiff received the CORC response after the filing of his Complaint does not cure the procedural defect.  See Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:14-CV-0124(GTS/DJS), 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016) ("It is well established that [r]eceiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted

10

before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks and citations omitted).  Thus, the record is clear that Plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit as CORC's decision was outstanding.  See Peoples, 212 F.Supp.2d at 142; McMillian, 2017 WL 8894737, at *2; White, 2011 WL 4478988, at *3.

### 2.  Availability of Administrative Remedies

Lovell contends that he should be excused from the exhaustion requirement because administrative remedies were unavailable to him as "[a]ll [of the] time periods mandated by [DOCCS'] own policies and procedures of Directive 4040 and 7 NYCRR § 701.5 were deliberately ignored."  Dkt. No. 19 at 5.  First, Lovell maintains that he filed the grievance on February 8, 2017 and the IGPS delayed forwarding his appeal of the Superintendent's decision to CORC for four months.  Id.  Further, Lovell asserts that he waited 18 months for CORC's decision.  Id.

Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y. Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167, 2015

WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694, 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination.").

Although "[t]he regulations [ ] provide that if the plaintiff does not get a 'receipt' from the CORC within 45 days of the date he filed his appeal, he should contact the IGP to make sure that his appeal was 'received[,]' " Bell v. Napoli, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *5 (N.D.N.Y. Dec. 11, 2018) (citing 7 N.Y.C.R.R. § 701.5(d)(3)(i)), "[t]here is no instruction on what a grievant is to do if he or she has appealed to the CORC, the final step, and has not received a response." High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (citing § 701.6(g)(1)(b)(ii)); see also Torres v. Carry, 672 F. Supp. 2d 338, 345 (S.D.N.Y. 2009) ("[DOCCS] regulations do not specify the procedures a prisoner may use to request that the CORC issue a decision if one has not been issued within thirty days."). DOCCS' regulations "do not describe a mechanism" for appealing or advancing a grievance when a grievant does not receive a response from CORC, as there is no next step to which a grievant may appeal. High, 2018 WL 3736794, at *5 (citing Williams, 829 F.3d at 124); see also Yates v. Smith, No. 9:17-CV-1227

12

(LEK/DEP), 2018 WL 4635715, at *5 (N.D.N.Y. July 11, 2018), report and recommendation adopted, 2018 WL 3727357 (N.D.N.Y. Aug. 6, 2018) (concluding that the IGP was not available to plaintiff because the governing regulations "do not contemplate what steps an inmate must take when he does not receive a response from the CORC within the thirty-day timeframe outlined in 7 N.Y.C.R.R. § 701.5(d)(2)(ii)"). "The regulations contain no instructions on how an inmate should proceed if the CORC continues to ignore him after he has been informed that his appeal was 'received.' " Bell, 2018 WL 6506072, at *7.

In High v. Switz, this Court excused the plaintiff's failure to exhaust his administrative remedies

> where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present [motion] had been filed.

High, 2018 WL 3736794, at *5.

Here, there is no dispute that Plaintiff filed a grievance on February 8, 2017; received the Superintendent's determination on May 26, 2017; and appealed that determination to CORC on or about May 27, 2017. See Compl. at 8, 10, 12; Dkt. No. 14-3 ¶ 2; Dkt. No. 14-4. CORC received Plaintiff's appeal on June 13, 2017 and should have released a decision by July 13, 2017. Dkt. No 19-1 at 6. Plaintiff has proffered evidence that, after he failed to receive a response from CORC, he wrote to the IGPS on August 10, 2017 and again on November 2017 concerning the status of his appeal. Dkt. No. 19-1 at 6, 8. Lovell was advised that his appeal was received in June 2017 but that CORC was "backlogged"

13

for a year.  Id.  There is no evidence in the record that CORC requested an extension or that Lovell consented to an extension.  CORC did not issue their determination until January 9, 2019.  Defendants do not address Lovell's contention or offer any explanation for the lengthy delay in CORC's decision.

Thus, the undersigned concludes that Lovell attempted to appeal his grievance to CORC but CORC failed to respond to his grievance until five months after he filed the within lawsuit, rendering the exhaustion remedies unavailable to him.  See Bell, 2018 WL 6506072, at *7 ("[B]y ignoring an inmate's appeal, [. . . ], the CORC could delay a plaintiff's exhaustion indefinitely, making the remedy 'unavailable' by thwarting plaintiff's attempt to exhaust.").  Thus, CORC's delay in rendering a decision on Lovell's grievance excused him from the exhaustion requirement.  See Rodriguez v. Reppert, No. 14-CV-671, 2016 WL 6993383, at *1 (W.D.N.Y. Nov. 30, 2016) (denying motion for summary judgment for failure to exhaust where CORC neglected to decide the plaintiff's appeal for three months); Rossi, 2015 WL 769551, at *6 (concluding that the passage of four months between the plaintiff's appeal and CORC's decision rendered the grievance process unavailable); see also Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA."); see also Bell, 2018 WL 6506072, at *4-7 (denying the defendants' motion for summary judgment based upon failure to exhaust where the plaintiff was advised that his appeal was received by CORC in May 2017 and CORC failed to investigate or issue a decision until "at least August 8, 2018"); Yates, 2018 WL 4635715, at *5-6 (denying

14

summary judgment because the defendant offered no explanation for CORC's delay of more than a year in adjudicating the appeal).

Accordingly, it is recommended that Defendants' motion be denied.

### III.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 14) be:

**DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[9]

Dated: May 1, 2019
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).