**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GILFORD LOVELL,

                        Plaintiff,

    v.                                                                      No. 9:18-CV-0685
                                                          (TJM/CFH)

SUPERINTENDENT MCAULIFFE, et al.,

                       Defendants.

---

**APPEARANCES:**                                    **OF COUNSEL:**

Gilford Lovell
16-R-2708
Cape Vincent Correctional Facility
Rte. 12E
PO Box 739
Cape Vincent, New York 13618
Plaintiff pro se

Attorney General for the                            MICHAEL G. MCCARTIN, ESQ.
State of New York                                   Assistant Attorney General
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Gilford Lovell ("Lovell"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Superintendent McAuliffe ("Sup. McAuliffe"), Acting Captain McCabe ("Cpt. McCabe"),

and Sergeant Furnace ("Sgt. Furnace") for their interference with his right to freely

exercise his religion in violation of the First Amendment. Dkt. No. 1 ("Compl.").[2]

Presently pending before the Court is Defendants' Second Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FED. R. CIV.

P."). Dkt. No. 32. Lovell responded in opposition to the motion, while Defendants have

declined the opportunity to file a reply. Dkt. Nos. 36-37. For the reasons that follow, it

is recommended that Defendants' Second Motion for Summary Judgment be granted.


# I. Background

## A. Facts[3]

Lovell's allegations stem from the time that he was confined to the Riverview

Correctional Facility ("Riverview C.F."). Dkt. No. 32-3 at 12;[4] see generally Compl.

Lovell is a practicing Rastafarian. See Dkt. No. 32-3 at 10-11. A fundamental tenent of

his religion is that "no sharp object shall touch you from your neck up," which means

that he is unable to either trim or shave his facial hair. Id. at 11.

Several days following his intake at Riverview C.F., Lovell was approached by a

correction officer who told him that he had "to take that braid out of [his] beard." Dkt.

---

[2] The Clerk of the Court is respectfully directed to modify the docket to reflect that Defendants full names are Brian F. McAuliffe, Thomas McCabe, and Lynn Furnace. See Dkt. No. 32-7 at 3.

[3] In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-moving party's favor. See Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

[4] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

No. 32-3 at 12.  Lovell explained to the officer that it was not a braid, but rather it was a dreadlock that was "part of [his] religion."  Id.  Overhearing this conversation, another correction officer approached and advised Lovell that he "need[ed] to get a permit for [his] beard."[5]  Id.

At approximately 11:00 A.M. on January 12, 2017, Lovell was summoned to Sgt. Furnace's office, where he was told that if he did not cut his beard by 5:00 P.M., he would "going to the [Special Housing Unit ("SHU")]."[6]  Dkt. No. 32-3 at 13, 15, 21.  Later that same day, Lovell explained to Sup. McAuliffe that that he was attempting to resolve the issue "with Albany."  Id.  at 14. Sup. McAuliffe responded, however, that, "whatever decisions his officers made, that's what the decision is."  Id.

Ultimately, in order to avoid confinement in the SHU, Lovell "shaved . . . everything down."  Dkt. No. 32-3 at 15, 18.  When asked why Lovell did not simply cut

---

[5] DOCCS promulgates guidelines, known as Directives, that are utilized by prison officials in order to carry out DOCCS policies, but are not necessarily distributed to the inmates.  See Chatin v. Coombe, 186 F.3d 82, 84 (2d Cir. 1999).  DOCCS also promulgates rules, which are provided to every inmate that enters the New York State prison system.  Id.  Although it does not appear to have been the case here, at certain times, the DOCCS guidelines and DOCCS rules have been at tension with one another.  See Young v. Goord, No. 01-CV 0626 (JG), 2005 WL 562756, at *1 (E.D.N.Y. Mar. 10, 2005), aff'd, 192 F. App'x 31 (2d Cir. 2006) (summary order).

In any event, under the current version of the rules:

> An inmate shall not grow a bear[d] or mustache over one inch in length unless: a. the inmate has a court order restraining the Department from enforcement; or b. the inmate has requested and received an exemption based upon his or her membership in a religion which has an established tenet against the trimming of beards, including, but not limited to, Rastafarian, Orthodox Judaism or Islam (Muslim).

N.Y. COMP. CODES R. & REGS. tit 7, § 270.2(B)(11)(vi); see also Directive 4914 ("Inmate Grooming Standards").

[6] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population[.]"  See N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are generally confined in a SHU as discipline, pending the resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

the dreadlock from his beard—rather than his entire beard—he responded that the

sharp object itself was the violation.  Id. at 16.  As a result, it did not "make a difference

if [he] cut the dreadlock or [he] cut the whole beard."  Id.

On March 23, 2017, Lovell was informed that a DOCCS attorney would be

"recommending to the Deputy Commissioner for Correctional Facilities that a permit be

issued granting you an exemption from the one-inch beard rule based upon your

religion."  Dkt. No. 32-4.  By letter dated April 18, 2017, Lovell was notified that he had

been granted an exemption from the one-inch beard and mustache rule contained in

Directive 4914 "based on [his] documented membership in a religion, which has an

established tenet against the trimming of beards."  Dkt. No. 32-5; see also Directive

4914 ("Inmate Grooming Standards").


**B.  Procedural History**

On June 13, 2018, Lovell commenced this action with the filing of a pro se civil

rights complaint.  See Compl.  Upon review of the Complaint, the Court directed

Defendants to respond to Lovell's First Amendment claims.  See Dkt. No. 4.  Following

the close of discovery, on January 14, 2019, Defendants filed their First Motion for

Summary Judgment, which sought judgment as a matter of law on the ground that

Lovell failed to properly exhaust his administrative remedies.  See Dkt. No. 14.  On May

1, 2019, the undersigned recommended that Defendants' motion be denied, and Senior

District Court Judge Thomas J. McAvoy adopted the Report-Recommendation & Order

in its entirety.  See Dkt. Nos. 20, 29.

On September 13, 2019—and with the permission of the Court—Defendants filed the Second Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. See Dkt. Nos. 30-32. In that motion, Defendants seek judgment as a matter of law on the basis that they are entitled to qualified immunity. See Dkt. No. 32. Lovell has filed papers in opposition to the motion, and Defendants have declined the opportunity to file a reply. See Dkt. Nos. 36-37.

## II. Discussion

Lovell contends that he was forced to cut his beard—or face confinement in the SHU—in violation of the Free Exercise Clause of the First Amendment. See generally Compl. In their motion, Defendants argue that even if Lovell has demonstrated that his constitutional rights were violated by their conduct, they are nonetheless shielded by qualified immunity. See Dkt. No. 32-7 at 3-9. Defendants argue that the constitutional right in question, which they define as the right for a religious inmate to grow a beard with a braid or dreadlock in it, was not "clearly established" at the time of the challenged conduct. Dkt. No. 32-7 at 3-9.

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  Id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions

6

> themselves do not "suggest," . . . that we should not "excuse
> frivolous or vexatious filings by <u>pro</u> <u>se</u> litigants," . . . and that
> <u>pro</u> <u>se</u> status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537

F.3d 185, 191-92 (2d Cir. 2008).


### B.  Qualified Immunity

Qualified immunity shields public officials from being sued for conduct

undertaken in the course of their duties so long as that conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (internal quotation marks and

citation omitted); <u>Eng v. Coughlin</u>, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if

the constitutional privileges "are so clearly defined that a reasonable public official

would know that his actions might violate those rights, qualified . . . immunity might still

be available . . . if it was objectively reasonable for the public official to believe that his

acts did not violate those rights."  <u>Kaminsky v. Rosenblum</u>, 929 F.2d 922, 925 (2d Cir.

1991); <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).

Generally, there are "two steps to the qualified immunity analysis: first, whether

the plaintiff established that his constitutional rights were violated, and second, whether

the right at issue was "clearly established" at the time of the alleged violation." <u>Bacon v.</u>

<u>Phelps</u>, 961 F.3d 533, 542 (2d Cir. 2020) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232

(2009)).  Defendants' motion implicates the latter consideration.  <u>See</u> Dkt. No. 32 at 4-9.

In that respect, to determine whether a right was "clearly established," a district court

must "generally 'look to Supreme Court and Second Circuit precedent existing at the

7

time of the alleged violation.'" Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting

Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009)); see

also Hawkins v. Steingut, 829 F.2d 317, 321 (2d Cir. 1987) (noting that a district court

decision does not "clearly establish" the law even of its own circuit, much less that of

other circuits").

Generally, to be considered "clearly established, "a right must be sufficiently clear

that every reasonable official would have understood that what he is doing violates that

right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (alterations and internal quotation

marks omitted).  In other words, "existing precedent must have placed the statutory or

constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

"The Supreme Court repeatedly has instructed that courts must not define clearly

established law at 'a high level of generality.'" Bacon, 961 F.3d at 545 (quoting al-Kidd,

563 U.S. at 742).  Thus, "[t]his inquiry must be undertaken in light of the specific context

of the case, not as a broad general proposition." Mullenix v. Luna, ____ U.S. ____,136

S. Ct. 305, 308 (2015).

At the same time, that is "not the only way in which a right may be "clearly

established" for qualified immunity purposes." Sloley v. VanBramer, 945 F.3d 30, 40

(2d Cir. 2019).  A right may also be "clearly established" if it is supported by "a robust

consensus of cases of persuasive authority." D.C. v. Wesby, ––– U.S. –––, 138 S. Ct.

577, 589-90 (2018) (internal quotation marks omitted).  The rule must be more than

merely suggested by then-existing precedent; rather, it must "clearly foreshow a

particular ruling." Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010).

**1. Application**

In the instant case, the right at issue is not the broad and general proposition that a prisoner has the First Amendment right to the free exercise of his or her religion, subject to restrictions relating to legitimate penological concerns. See Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). Rather, the more specific right at issue is whether Lovell has an unfettered right to grow facial hair in the manner and length that he prefers. The undersigned concludes that such a right—which is separate and distinct from Lovell's right to maintain cranial dreadlocks—was not "clearly established" at the time Lovell was forced to cut the dreadlock from his beard or face SHU confinement. In the alternative, the undersigned concludes that it was objectively reasonable for Defendants to believe that their acts did not violate Lovell's rights.

To begin with, the Second Circuit observed in Benjamin v. Coughlin, 905 F.2d 571 (2d Cir. 1990) that some Rastafarian principles are at tension with certain prisons rules and policies, including the use of loose-fitting knit headgear known as "crowns," weekly congregation for Issembly,[7] and the observance of a special diet known as "Ital." See id. at 573-74. The Court also observed that "[a] fundamental tenet of the religion is that a Rastafarian's hair is not to be combed or cut, resulting in rope-like strands known as "dreadlocks." Id. at 573. With this latter principle in mind and relying on the four-factor test articulated by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), the

---

[7] "'Issembly'" refers to the Rastafarian "congregate religious observance" where members of the faith gather to chant, beat drums, read, and engage in religious conversation known as "'reasoning.'" Benjamin, 905 F.2d at 573.

Second Circuit determined that a Rastafarian inmate could not be required to submit to an initial haircut.  See Benjamin, 905 F.2d at 573.

    In so holding, the Second Circuit analysis turned upon the application of the fourth Turner factor, which requires a court to consider whether there is "an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."  Turner, 482 U.S. at 90-91; see Benjamin, 905 F.2d at 576-77 (applying fourth Turner factor).  The Court ultimately concluded that "tying [an inmate's hair back for the initial photograph] . . . adequately accommodates the interests of prison authorities in revealing an inmate's cranial and facial features."  Benjamin, 905 F.2d at 576-77.  As a result, it is "clearly established" that Rastafarian inmates can "maintain their dreadlocks absent a valid penological interest that requires their preclusion" arising under the First Amendment.  Pilgrim v. Artus, No. 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *17 (N.D.N.Y. Mar. 18, 2010), report and recommendation adopted, No. 9:07-CV-1001 (GLS/GHL), 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010) (citing Benjamin, 905 F.2d at 576-77).

    What is not "clearly established," however, is whether an inmate's right to maintain cranial dreadlocks extends to an inmate's right to maintain facial dreadlocks.  In Fromer v. Scully, 874 F.2d 69 (2d Cir. 1989), an inmate of the Orthodox Jewish faith challenged a previous iteration of Directive 4194, which permitted all inmates to maintain a one-inch beard following a required clean shave for an initial identification photograph.  See id. at 71.  The Court rejected the plaintiff's First Amendment challenge, concluding that DOCCS officials had a legitimate penological concern in inmate identification and that there was "a logical, if not obvious, connection between

10

beard length and ease of identification of facial features." Id. at 74. Unlike in Benjamin, the Court concluded that there was no alternative that could fully accommodate the prisoner's rights at de minimis cost to that valid interest. See id. at 76 (citing Turner, 482 U.S. at 89-91); see also Benjamin, 905 F.2d at 577 ("In Fromer, it appeared that there was no alternative to shaving the appellant's beard to reveal his facial features properly.").

As a result of the foregoing, courts within the Second Circuit have acknowledged that there is a difference between how cranial hair and facial hair is treated for First Amendment purposes. See, e.g., Solomon v. Chin, No. 96-CV-2619 (DC), 1997 WL 160643, at *3 (S.D.N.Y. Apr. 7, 1997) ("Thus, in the Second Circuit, male inmates may assert claims with respect to an initial haircut, but are precluded from asserting claims with respect to an initial shaving of their faces."); Gertzulin v. Corcoran, No. 91-CV-3428 (LLS), 1991 WL 222141, at *2 (S.D.N.Y. Oct. 24, 1991) (concluding that prison officials were entitled to qualified immunity because it was not clear whether sidelocks—known as "payis" in the Orthodox Jewish faith—were classified as facial hair, such that Fromer would apply, or cranial hair, such that Benjamin would apply). Moreover, in the thirty-one years since Fromer was decided, neither the Supreme Court nor the Second Circuit has extended to protections of the First Amendment to a religious inmate's right to grow facial hair in the method and manner he sees fit. See, e.g., Muhammad v. Correction Officer Douglas, No. 15-CV-0935 (NSR), 2016 WL 3082657, at *6 (S.D.N.Y. May 26, 2016) (observing that a number of courts in the Second Circuit have held "that Directive 4914 is reasonably related to legitimate penological interests"); Berisha v. Farrell, No. 9:13-CV-1191 (LEK/ATB), 2016 WL 1295178, at *4 (N.D.N.Y. Mar. 8, 2016) (noting that

a First Amendment challenge to Directive 4914 has been "considered and rejected in other cases"), <u>report and recommendation adopted sub nom.</u> <u>Berisha v. Fischer</u>, No. 9:13-CV-1191, 2016 WL 1306351 (N.D.N.Y. Mar. 31, 2016); <u>Young</u>, 2005 WL 562756, at *8 ("The legitimacy of the penological interest in policing the facial hair of inmates is clear.").

Nor can it be said that the right implicated by the facts of this case is supported by "a robust consensus of cases of persuasive authority," <u>Wesby</u>, 138 S. Ct. at 589-90 or "clearly foreshow[n by] a particular ruling," <u>Scott</u>, 616 F.3d at 104. Multiple courts have upheld restrictions on inmate facial hair in the face of First Amendment challenges. <u>See</u>, <u>e.g.</u>, <u>Kuperman v. Wrenn</u>, 645 F.3d 69, 77 (1st Cir. 2011) (concluding that a quarter-inch beard regulation did not violate the First Amendment); <u>Hicks v. Garner</u>, 69 F.3d 22, 25 (5th Cir. 1995) (recognizing the prison grooming regulations do not violate the First Amendment); <u>Pollock v. Marshall</u>, 845 F.2d 656, 659-60 (6th Cir. 1988) (regulation restricting inmates' hair length did not violate First Amendment); <u>Gentry v. Virginia Dep't of Corr.</u>, No. 1:17-CV-766 (LO/IDD), 2019 WL 2288438, at *5 (E.D. Va. May 28, 2019) (dismissing an inmate's First Amendment challenge); <u>Oakes v. Green</u>, No. 08-CV-12 (HRW), 2008 WL 559683, at *4 (E.D.Ky. Feb. 27, 2008) (regulation prohibiting beards did not violate First Amendment); <u>Daker v. Wetherington</u>, 469 F. Supp. 2d 1231, 1237, 1239 (N.D.Ga. 2007) (same).[8] Based on the foregoing,

---

[8] The undersigned is mindful of the Supreme Court's decision in <u>Holt v. Hobbs</u>, 574 U.S. 352 (2015), wherein the Court concluded that a prison's complete ban on facial hair violated the RLUIPA. <u>See id.</u> at 369. The RLUIPA framework, however, is exceptionally demanding and imposes a higher burden on prison officials than does the First Amendment. <u>See</u> <u>Dove v. Broome Cty. Corr. Facility</u>, No. 9:10-CV-0002 (DNH/DEP), 2011 WL 1118452, at *10 (N.D.N.Y. Feb. 17, 2011), <u>report and recommendation adopted</u>, No. 9:10-CV-02 (DNH/DEP), 2011 WL 867072 (N.D.N.Y. Mar. 10, 2011). As a result, it cannot be said the decision in <u>Holt</u>, which analyses a grooming policy in the context of the RLUIPA, would clearly foreshow an outcome under the less demanding First Amendment.

the undersigned concludes that there is no clear precedent that would warn a reasonable officer that requiring a Rastafarian inmate to remove a dreadlock from his beard could potentially violate the Free Exercise Clause of the First Amendment.

In the absence of a "clearly established" right, it was therefore objectively reasonable for Defendants to enforce Directive 4914 and require that, in the absence of a permit, Lovell cut the dreadlock from his beard.  Accordingly, it is recommended that Defendants' motion be granted on the basis that they are entitled to qualified immunity.

### III.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that Defendants' Second Motion for Summary Judgment (Dkt. No. 32) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** in its **ENTIRETY WITH PREJUDICE**, and it is further

**ORDERED**, that the Clerk of the Court revise the docket to reflect the correct spelling of Defendants' names as reflected in footnote 2, supra; and it is further,

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v.

Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 6(a), 6(e), 72.[9]

      Dated: July 13, 2020
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).